UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.   09-20524-CIV-LENARD

**HILDA L. SOLIS, Secretary of Labor,**
**United States Department of Labor,**

   **Plaintiff,**

v.

**LOCAL 568, TRANSPORT WORKERS**
**UNION OF AMERICA**

   **Defendant.**
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

  Plaintiff, Hilda L. Solis, Secretary of the United States Department of Labor (hereinafter "Secretary"), hereby moves for summary judgment against Defendant, Local 568, Transport Workers Union of America (hereinafter "Local 568" or "the Local"), and an order pursuant to Section 402 of Title IV of the Labor-Management Reporting and Disclosure Act (hereinafter "LMRDA" or "Act"), 29 U.S.C. § 482(c), declaring void Local 568's December 2008 election of officers and requiring a new election to be held under the Secretary's supervision.  In support of this Motion, the Secretary states the following:

**INTRODUCTION**

  Local 568 is a labor organization representing American Airlines fleet service clerks in Miami, Fort Lauderdale and Tampa, Florida.  In February of 2006, Local 568 amended its bylaws to include a requirement that members attend at least 50% of its general membership meetings during the twelve (12) months preceding nominations in order to be eligible to run for union office.

1

Although the Local's stated purpose for the bylaw amendment was to increase member participation in union affairs, the Local did not publicize the meeting attendance requirement to members until September of 2008, when it invited potential candidates to run for office in the December 2008 elections.

After the votes in the December 2008 election were counted, the incumbent President, 1st Vice President and 2nd Vice President were each re-elected to office. Each of them ran unopposed. In all, the meeting attendance requirement rendered 95.95% of the Local's members ineligible to seek office.

After one of the Local's members who was denied the opportunity to run in the elections filed a timely Complaint with the United States Department of Labor's Office of Labor-Management Standards, the agency conducted an investigation. The Department of Labor has concluded that the Local's meeting attendance requirement constitutes an unreasonable restriction on candidacy, in violation of section 401(e) of Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA" or "Act"), 29 U.S.C. § 481(e). This violation of the LMRDA may have affected the outcome of the election for all positions. Therefore, pursuant to Section 402 of the LMRDA, the Secretary brought this action seeking to set aside the Local's December 2008 election of officers and require that a new election be held under the supervision of the Department of Labor.

## STATEMENT OF UNDISPUTED FACTS

1. Local 568 is composed of approximately 2400 active members. *See* Declaration of Susan Nixon ("Nixon Decl."), a copy of which is attached hereto as Exhibit "1," at ¶1.

2. Local 568 represents fleet service clerks that handle luggage, cargo, mail, aircraft cleaning, and other duties for American Airlines at Miami International Airport ("MIA"), Ft. Lauderdale International Airport ("FLL"), and Tampa International Airport ("TPA"). Nixon Decl. at

¶2.

3.    Because the Local has members in three cities, it holds its monthly membership meetings in each of the cities on different days. The Local's Executive Board meets each month on the day before the monthly general membership meets in Miami. Nixon Decl. at ¶3.

4.    The Local's bylaws call for the election of officers every three years. Nixon Decl. at ¶4.

5.    On January 5, 2006, Local 568's Recording Secretary, Chuck Hernandez, posted notices on the Local's designated bulletin boards at MIA indicating that a bylaw amendment was on the agenda for the Local's January 13, 2006 membership meeting in Miami. Mr. Hernandez also faxed notices indicating that a by-law amendment was on the agenda for the January 14, 2006 and the January 25, 2006 general membership meetings in Tampa and Fort Lauderdale, respectively. The notices were to be posted in the employee break rooms at TPA and FLL. Nixon Decl. at ¶5, Exhibit A.

6.    The notices did not provide information as to the substance of the proposed bylaw amendment on the agenda. Nixon Decl. at ¶6, Exhibit A.

7.    The proposed bylaw amendment required the Local's members to have attended at least 50% of the regular membership meetings in the 12 month period immediately preceding nominations to be eligible for candidacy in the election of union officers (hereinafter "bylaw amendment" or "amended bylaw"). Nixon Decl. at ¶7, Exhibit B.

8.    In the event that a member failed to attend a general membership meeting for good cause, the proposed bylaw amendment allowed the member to apply in writing for attendance credit within seven days after the missed meeting. Attendance credits could be awarded a maximum of two times during a twelve month period.    Nixon Decl. at ¶8, Exhibit B.

3

9. The Local's bylaws required only 5% of Local's members to be present at general membership meeting for a quorum to exist. Nixon Decl. at ¶9, Exhibit C. The proposed bylaw amendment was approved by the unanimous vote of the 151 union members present at the January 2006 general membership meetings, which constituted approximately 6.3% of the general membership. Nixon Decl. at ¶9.

10. After the bylaw amendment was approved by the Local's membership, the Local submitted the amended bylaw to the Administrative Committee of the Transport Workers International Union (hereinafter "International") for approval. On February 28, 2006, the International's Secretary-Treasurer, John Kerrigan, sent written confirmation of approval by the International and the bylaw amendment went into effect that day. Nixon Decl. at ¶10, Exhibit D.

11. While copies of the bylaws which included this amended bylaw were available to members at the union office, the Local did not at that time provide notice to the general membership regarding the substance of the amended bylaw, or that the amended bylaw was approved by the International and was in effect. Nixon Decl., at ¶11.

12. The first record of a publically disseminated notice to the Local's membership regarding the amended bylaw was in September 2008, over two-and-a-half years after it had gone into effect. These notices were posted immediately prior to the nominations period for the Local's next regularly scheduled election in December 2008. Nixon Decl. at ¶12, Exhibit E.

13. On September 30, 2008, the Local posted a notice inviting "[a]nyone interested in running for the office of: President, 1st Vice President, 2nd Vice President, Recording Secretary, Secretary Treasurer, [or] Executive Board Member" to pick up a Candidate Petition for nomination. Nixon Decl. ¶13, Exhibit F. On October 7, 2008, the Local's Election Committee again invited the Local's membership to pick up nominating petitions. Nixon Decl., at ¶13.

14.     David Bates, a member in good standing with the Local at all times relevant, requested a nominating petition from the Local.  However, the Local's Election Committee denied Bates' request for a petition because he had not attended at least 50% of the Local's membership meetings in the prior twelve months and thus, pursuant to the amended bylaw, was ineligible to run in the election. Nixon Decl., at ¶14.

15.     Other prospective candidates who were also members in good standing, including Sergio Benitez, Dan Brennan, Armando Castillo, Eugene Manatan, Julio Mercado, Henry Padilla, and Miguel Vento, were also deemed ineligible to run in the elections pursuant to the meeting attendance requirement.  Nixon Decl., at ¶15.

16.     In all, twenty-five (25) members in good standing requested nominating petitions, but only sixteen (16) of them were deemed eligible to run in the elections.  The other nine (9) were rendered ineligible by the meeting attendance requirement.  Those nine members would have been eligible to run, but for the requirement. Nixon Decl., at ¶16.

17.     A review of membership meeting sign-in logs and meeting minutes confirmed that 95.95% of the Local's members were rendered ineligible to run in elections as a result of the Local's meeting attendance requirement.  Nixon Decl., at ¶17.

18.     Elections were ultimately held by mail ballot between November and December, 2008.  The Local's incumbent President, 1st Vice President and 2nd Vice President ran unopposed and were re-elected to office. Nixon Decl. at ¶18, Exhibit G.

19.     On or about December 17, 2008, union member David Bates filed a timely complaint with the United States Department of Labor's Office of Labor-Management Standards alleging that he was improperly denied the right to seek office in the Local's recently concluded elections on account of the Local's general membership meeting attendance requirement.  Nixon Decl. at ¶19,

5

Exhibit H.

## ARGUMENT

### A.  Purpose of the LMRDA and Its Candidate Qualification Provisions

The principal goal of Title IV of the LMRDA "is to insure fair and democratic [union] elections." *Wirtz v. Local 153, Glass Bottle Blowers, Ass'n*, 389 U.S. 463, 470 (1968); *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 496 (1968).  In the 1950's, Congress investigated the nation's unions and found corruption in union leadership and disregard for rank-and-file members.  *See* LMRDA § 2(b), 29 U.S.C. § 401(b); S. Rep. No. 187, 86th Cong., 1st Sess., reprinted in 1959 U.S. Code Cong. & Admin. News 2318-2321.  Through the LMRDA, Congress sought to "protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and through the election process. . . ."  *Hotel Employees, Local 6*, 391 U.S. at 497; see, e.g., LMRDA § 2(c); *Local 153, Glass Bottle Blowers*, 389 U.S. at 469-471.  Recognizing that free and fair elections were essential to union self-government, Congress enacted the safeguards of Title I and Title IV of the LMRDA "to provide a fair election and guarantee membership participation." *American Federation of Musicians v. Wittstein*, 379 U.S. 171, 182 (1964); *see*, *e.g., Wirtz v. American Guild of Variety Artists*, 267 F. Supp. 527, 544 (S.D.N.Y. 1967) (Congress intended unions to conduct democratic and scrupulously fair elections).

Among the protections in Title IV of the LMRDA is the requirement in section 401(e) of the Act, 29 U.S.C. § 481(e), that "every member in good standing shall be eligible to be a candidate and to hold office subject to . . . reasonable qualifications uniformly imposed."  The Supreme Court has specifically held that the "reasonable qualifications" language of section 401(e) should not be read broadly.  *Hotel Employees, Local 6*, 391 U.S. at 499; see also 29 C.F.R. § 452.36.  Thus, a variety of

eligibility requirements have been struck down as unreasonable under section 401(e).  *See, e.g., Hotel Employees, Local 6*, 391 U.S. at 504-05 (prior office holding); *Donovan v. Local 120, Laborers' International Union*, 683 F.2d 1095, 1104-1105 (7th Cir. 1982) (competency); *Donovan v. Sailors Union of the Pacific*, 739 F.2d 1426 (9th Cir. 1984), cert. denied, 471 U.S. 1004 (1985) (three-year membership).

The Secretary's interpretative regulations summarize the proper approach in analyzing any restriction to a member's eligibility to run for union office.[1]  The regulations provide that:

> [A] dominant purpose of the Act is to ensure the right of members to participate fully in governing their union and to make its officers responsive to the members. A basic assumption underlying the concept of "free and democratic elections," is that voters will exercise common sense and good judgment in casting their ballots. In union elections as in political elections, the good judgment of the members in casting their votes should be the primary determinant of whether a candidate is qualified to hold office. **Therefore, restrictions placed on the right of members to be candidates must be closely scrutinized to determine whether they serve union purposes of such importance, in terms of protecting the union as an institution, as to justify subordinating the right of the individual member to seek office and the interest of the membership in a free, democratic choice of leaders.**

29 C.F.R. § 452.35 (emphasis added); *see also* 29 C.F.R. § 452.36(b) (listing factors relevant to assessing the reasonableness of a qualifications for union office).

### B. Regulations and Case Law Regarding the Propriety of "Meeting Attendance Requirements" for Union Members Seeking Office

The Secretary's interpretative regulations also specifically address meeting attendance

---

[1] While the Secretary's interpretative regulations are not binding, *see Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1357 (9th Cir. 1985), courts nonetheless give the regulations considerable weight.  *See, e.g., BLE International Reform Committee v. Sytsma*, 802 F.2d 180, 190 (6th Cir. 1986); *Donovan v. National Transient Division of International Brotherhood of Boilermakers*, 736 F.2d 618 (10th Cir. 1984), *cert. denied*, 469 U.S. 1107 (1985); *Alvey v. General Electric Co.*, 622 F.2d 1279, 1286 n.7 (7th Cir. 1980).

requirements for union members seeking to run for union office, indicating that it may be reasonable for a union to have a requirement which ensures that candidates have the requisite knowledge of and interest in union affairs. 29 C.F.R. § 452.38(a). Whether a particular rule is reasonable will depend upon all of the surrounding circumstances, including:

> not only the frequency of meetings, the number of meetings which must be attended and the period of time over which the requirement extends, but also such factors as the nature, availability and extent of excuse provisions, whether all or most members have the opportunity to attend meetings, and **the impact of the rule, i.e., the number or percentage of members who would be rendered ineligible by its application.**

*Id* (emphasis added). A footnote to the regulation further indicates that the disqualification of a large percentage of members, by itself, may be enough to render a meeting attendance requirement unreasonable:

> If a meeting attendance requirement disqualifies a large portion of members from candidacy, that large antidemocratic effect alone may be sufficient to render the requirement unreasonable. In *Doyle v. Brock*, 821 F.2d 778 (D.C. Cir. 1987), the court held that the impact of a meeting attendance requirement which disqualified 97% of the union's membership from candidacy was by itself sufficient to make the requirement unreasonable notwithstanding any of the other factors set forth in 29 C.F.R. 452.38(a).

*Id* at n.25.

Consistent with these regulations, numerous federal courts have examined the issue of meeting attendance requirements for those seeking union office. The seminal case on the issue is *Local 3489, United Steelworkers of America, AFL-CIO v. Usery*, 429 U.S. 305 (1977). In *3489 Steelworkers*, the Court found unreasonable the Steelworkers' meeting attendance rule requiring candidates to attend at least one-half of the regular meetings for three years prior to the election. *Id*. at 306-07. The Court explained that this attendance requirement excluded 96.5% of the membership and required a member to decide on his potential candidacy at least eighteen months before the

election, and thus it had a restrictive effect on union democracy and was inconsistent with the Act's goal of free and democratic elections. *Id*. at 310-11. While the union argued that attendance at eighteen short meetings was not onerous, the Court stated that the eligibility rule had to be considered "not by the burden it imposes on the individual candidate, but by its effect on free and democratic processes of union government." *Id*. at 310 n.6.

Since the Supreme Court's decision in *3489 Steelworkers*, courts consistently have found union rules that disqualify large percentages of members from running for office to be unreasonable and inconsistent with the goal of free and democratic union elections. *See, e.g., Herman v. Local 1011, United Steelworkers of America*, 207 F.3d 924 (7th Cir. 2000) (finding unreasonable an attendance requirement of eight monthly meetings over previous two years, which resulted in the disqualification of 92% of members); *Marshall v. Local 1402, International Longshoremen's Association of Tampa*, 617 F.2d 96, 98 (5th Cir. 1980) (finding unreasonable a requirement that members attend one of two monthly meetings for previous twelve months, which resulted in the disqualification of 93.7% of members); *Donovan v. Local 119, International Union of Electrical, Radio & Machine Workers*, 548 F. Supp. 997 (E.D. Pa. 1982) (finding unreasonable a requirement that members attend one-third of meetings over two year period, which resulted in the disqualification of 96.4% of members); *Marshall v. N.Y. Metro Area Postal Union*, 1980 WL 102271 (S.D.N.Y. Feb. 29, 1980) (finding unreasonable requirement that members attend four meetings in each of two years, which resulted in the disqualification of 99% of members). While there may have been other defects in the various election rules considered by those courts, there is no question that the percentage of members disqualified by the attendance requirement was a crucial factor.

One case particularly on point with the instant case is the D.C. Circuit's ruling in *Doyle v.*

*Brock*, 821 F.2d 778 (D.C. Cir. 1987). In *Doyle*, the court held that a requirement that a candidate must attend at least half of the membership meetings in the previous year in order to run for office - precisely the same requirement that Local 568 instituted in the instant case - was invalid. The court applied a balancing test weighing the anti-democratic effect of the rule against the interests of the union that the rule supposedly served. *Id*. at 785. The court found the union's argument that the attendance rule encouraged membership participation in union affairs – again, precisely the same defense the Secretary anticipates Local 568 will advance in this case – did not justify a qualification requirement which precluded 97 percent of the local membership from holding union office.

**C.    Local 568's Meeting Attendance Requirement is Clearly Unreasonable**

In light of the Secretary's interpretive regulations and the wide body of case law discussed above, the meeting attendance bylaw used by Local 568 is unreasonable and thus contrary to Section 401(e) of the LMRDA.

Most significantly, the bylaw renders a very large portion of the Local 568 membership ineligible to run for office, satisfying a crucial factor relied on in the case law evaluating meeting attendance requirements. 29 C.F.R. § 452.38(a). The Department's investigation found that the meeting requirement bylaw enacted by Local 568 rendered all but 96 of the Local's 2,374 members ineligible to run for office. In terms of percentages, nearly 96% of the membership was unable to run for office pursuant to the bylaw amendment. Per the court's ruling in *Doyle*, this alone would be sufficient to demonstrate that Local 568's meeting requirement was unreasonable, absent a showing by the union that the requirement "serves valid union interests." 821 F.2d at 785 (requirement that rendered 97% ineligible "cannot be reasonable on its face"); see also 29 C.F.R. § 452.38(a), n.25. Here, as in *Doyle*, the Local cannot establish that the rule serves valid union interests. Although the Local will likely claim that the meeting attendance requirement was intended to encourage members

to attend meetings and take an interest in the affairs of the local, this claim is severely undercut by the union's failure to notify the membership that the meeting attendance requirement was in effect until September 2008, over two-and-a-half years after it had passed..

While the sheer percentage of the membership rendered unable to run for office is powerful evidence that alone could support granting summary judgment, other factors for evaluating the reasonableness of meeting membership requirements set forth in the Secretary's interpretive regulations also weigh toward a finding that Local 568's meeting attendance requirement is unreasonable. One such factor is the number and frequency of meetings that members are required to attend, and the period of time over which this requirement extends, to be eligible to run. 29 C.F.R. § 452.38(a). Local 568 required members to attend one-half of the monthly meetings over the twelve months prior to the period for nominations. Because the nominations period began in September 2008, a member who had not been attending meetings previously would have had to have attended every membership since March 2008 in order to be eligible to run. In *1011 Steelworkers*, the Court addressed the burdensome effect of a similar requirement (eight meetings over the previous two years), stating that:

> it compels the prospective candidate not only to sacrifice what may be scarce free time to sit through meetings, but also, if he is disinclined to attend meetings for any reason other than to be able to run for union office, to make up his mind whether to run many months before the election.

207 F.3d at 928. Precisely the same is true in this case. Given the meeting requirement bylaw Local 568 passed, members would have had attend every monthly meetings beginning in March or April of 2008 in order to run as a candidate in the December 2008 election.[2]

---

2 This was, of course, made even more unreasonable due to the fact that the Local did not publically disseminate the meeting attendance requirements until September 2008. *See infra* at 12-13.

11

Other factors to consider are "the nature, availability and extent of excuse provisions," 29 C.F.R. § 452.38(a). The meeting requirement provision that Local 568 enacted states that members:

> can apply for attendance credit for a maximum of two (2) membership meeting credits in writing within seven days (7) after the meeting. The local executive board within thirty (30) days after receipt of application finds that a member has "good cause" which excuses his/her non-attendance; the member shall be deemed for the purpose of this section to have attended such meeting . . . . The decision of the executive shall be final and binding.

These excuse provisions create a problematic burden. First, as discussed above, the vast majority of the membership was not informed about the applicability of any meeting requirement at all, let alone the excuse provisions therein, until the requirement was posted in September 2008. Given the strict seven-day time period allotted to members for seeking an attendance credit, this would have prevented those members who did not know about the meeting requirement from seeking such attendance credits in an attempt to fulfill the requirement. Further, the excuse provisions the Local adopted are far stricter, and at odds with, the International Constitution's compulsory language on excusive provisions. The International Constitution states, in pertinent part, that:

> [t]he failure of a member to attend a meeting because of the requirement of his/her job or any other adequate reason **shall not affect** his/her eligibility to run for and hold any elective or appointive position, **provided that, within thirty (30) days after such non-attendance** he/she files a written statement with the Local Recording Secretary of the reasons for his/her non-attendance. . . . Should the Local Executive Board challenge the stated reasons, **it shall afford the member a hearing** at which the burden shall be on the member to establish, to the satisfaction of the Board, the truth and adequacy of his/her stated reasons.

(ROI Ex. 36) (emphasis added). Despite the clear, compulsory language of the International's Constitution, Local 568 created excuse provisions that: (a) permit only two excused absences; (b)

allow far less time for members to apply for an attendance credit; and (c) do not provide for any appeal of the Executive Board's decision. Further, in the course of the Department's investigation, the General Counsel for the International stated that Local 568's excuse provision was "arguably" in conflict with the International Constitution, and that, if such a conflict did exist, the TWU International Constitution's provisions would prevail. (ROI Ex. 14). In short, the excuse provisions in Local 568's meeting requirement weigh heavily against a finding that the requirement is reasonable.

Finally, the regulation also cautions that the reasonableness of a meeting attendance requirement "must be gauged in the light of all the circumstances of the particular case. . . ." 29 C.F.R. § 452.38. While the rule would be deficient in any event, the fact that Local 568 did not take steps to disseminate the new meeting attendance requirement to its membership until just prior to its 2008 election of officers plainly demonstrates the unreasonableness of the requirement. This fact suggests that the purpose of the rule was not, as the Local will likely argue, enacted to increase participation in union affairs, but instead a mechanism to eliminate competition for incumbent officers seeking reelection.

In sum, the factors set forth in 29 C.F.R. § 452.38(a) indicate that Local 568's meeting requirement is unreasonable and incompatible with the LMRDA's goal of ensuring fair and democratic union elections. 29 U.S.C. 481(e).

### D.     Local 568's Impermissible Use of the Meeting Attendance Requirement May Have Affected the Outcome of the Election

When a violation of Section 401 of the LMRDA "may have affected the outcome of the election," Section 402 of the LMRDA requires the court to declare the challenged election void and order a new election under government supervision. *See* 29 U.S.C. § 482(c); *Local 6, Hotel, Motel*

*and Club Employees*, 391 U.S. at 505-509; *Usery v. Stove, Furnace, and Allied Appliance Workers International Union of North America*, 547 F.2d 1043, 1046 (8th Cir. 1977); *Marshall v. Office and Professional Employees Union, Local 2*, 505 F. Supp. 121, 122 (D.D.C. 1981). The Supreme Court has ruled that proof of a violation of Section 401 of the LMRDA establishes a *prima facie* case that the violation may have affected the outcome of the election. *Local 6, Hotel, Motel and Club Employees*, 391 U.S. at 506-507. The burden is then on the labor organization to produce concrete, non-speculative evidence that the outcome of the election was not affected by this violation. *Id.* at 508.

However, where, as here, the violation involves the potential exclusion of candidates from the ballot, courts have widely held that "the burden on the union is so great as to be insurmountable." *Usery v. International Organization of Masters, Mates, and Pilots*, 422 F. Supp. 1221, 1226 (S.D.N.Y. 1976), *aff'd as modified*, 538 F.2d 946 (2d Cir. 1976); *see also Wirtz v. Local Union 410, International Union of Operating Engineers*, 366 F.2d 438, 443 (2d Cir. 1966), *quoted with approval in Local 6, Hotel, Motel and Club Employees Union*, 391 U.S. at 507. Accordingly, Local 568 is *per se* unable to show the outcome of the election was not affected.

## CONCLUSION

In sum, the Secretary has established that Local 568's meeting attendance requirement violated Section 401(e) of the LMRDA, and the violation may have affected the outcome of Local 568's December 2008 election of officers. Therefore, the Secretary respectfully seeks an order from this Court granting this Motion for Summary Judgment, declaring void Local 568's December 2008 election of officers and requiring a new election to be held under government supervision.

WHEREFORE, premises considered, Plaintiff, Hilda L. Solis, Secretary of the United States Department of Labor, respectfully seeks an order from this Court granting this Motion for Summary

Judgment, declaring void Local 568's December 2008 election of officers, and requiring a new election to be held under the supervision of the Department of Labor.

Dated August 21, 2009  
Miami, FL

Respectfully submitted,

JEFFREY H. SLOMAN  
ACTING UNITED STATES ATTORNEY

BY: /s/ Carlos Raurell_____  
CARLOS RAURELL  
ASSISTANT U.S. ATTORNEY  
Florida Bar No. 529893  
99 N. E. 4th Street  
Miami, Florida   33132-2111  
TEL (305) 961-9243  
FAX (305) 530-7139

CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Carlos Raurell_____  
Assistant United States Attorney